UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD BERKLEY,

                              Plaintiff,

          v.

CITY OF NEW ROCHELLE, NEW
ROCHELLE POLICE DEPARTMENT,
POLICE OFFICER DIEGO RODRIGUEZ,
LIEUTENANT EDWARD HAYES,
SERGEANT LAWRENCE BORNHOLZ,
DETECTIVE MACHADO, POLICE
OFFICER SANCHEZ, each in his or her
official and individual capacity, *and*
JOHN/JANE DOE 1–10, each in a fictitious
capacity individually and as police officers
involved in the subject arrest and subsequent
events,

                              Defendants.

No. 21-CV-578 (KMK)

<u>OPINION & ORDER</u>

Steven Glassberg, Esq.
Glassberg & Associates, LLC
Port Washington, NY
*Counsel for Plaintiff*

Brian Sokoloff, Esq.
Mark Radi, Esq.
Sokoloff Stern LLP
Carle Place, NY
*Counsel for Defendants City of New Rochelle, New Rochelle Police Department, Lieutenant
Edward Hayes, Sergeant Lawrence Bornholz, Detective Machado, and Police Officer Sanchez*

KENNETH M. KARAS, United States District Judge:

        Richard Berkley ("Plaintiff") brings this Action against the City of New Rochelle (the

"City"), the New Rochelle Police Department ("NRPD"; together with the City, the "Municipal

Defendants"), Lieutenant Edward Hayes ("Hayes"), Sergeant Lawrence Bornholz ("Bornholz"),

Detective Machado ("Machado"), Police Officer Sanchez ("Sanchez"; together with Hayes, Bornholz, and Machado, the "Individual Defendants"; collectively with Municipal Defendants, "Moving Defendants"), Police Officer Diego Rodriguez ("Rodriguez"), and John/Jane Doe 1–10 for claims pursuant to 42 U.S.C. § 1983 for alleged violations of his Fourth, Sixth, Eighth, and Fourteenth Amendment rights under the U.S. Constitution and parallel rights under New York state law in connection with Plaintiff's June 2020 arrest and detention following a mental health incident.[1]  (*See* Second Amended Complaint ("SAC") (Dkt. No. 18).)  Before the Court are Municipal Defendants' and Individual Defendants' Motions To Dismiss (the "Motions").  (*See* Individual Defs.' Not. of Mot. (Dkt. No. 24); Municipal Defs.' Not. of Mot. (Dkt. No. 27).)  For the foregoing reasons, the Motions are granted.

## I.  Background

### A.  Materials Considered

As a threshold matter, the Court determines the proper treatment of a number of exhibits attached to both Individual Defendants' Motion and Plaintiff's Opposition.  Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the [c]omplaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).  Nevertheless, "the Court's consideration of documents attached to, or incorporated by reference in the [c]omplaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021)

---

[1] Individual Defendants represent that NRPD does not employ any officer by the name of "Diego Rodriguez" and note that because of this, Rodriguez has not been served.  (*See* Individual Defs.' Mem. of Law in Supp. of Mot. 7 n.4 (Dkt. No. 26).)

(explaining that "when ruling on a Rule 12(b)(6) motion to dismiss," courts may "consider the complaint in its entirety . . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken." (alteration omitted) (quoting *Saimels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993))).  "Moreover, 'where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.'" *Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 394 (S.D.N.Y. 2015) (alteration omitted) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

Collectively, the Parties attach six exhibits to their briefing: (1) a copy of the SAC, (*see* Decl. of Mark A. Radi in Supp. of Individual Defs.' Mot. ("Radi Decl.") (Dkt. No. 25) Ex. A (Dkt. No. 25-1)); (2) a copy of the recording of the 911 calls between Plaintiff's mother and the NRPD and Plaintiff's wife, Alison Berkley ("Ms. Berkley"), and the NRPD, which precipitated Plaintiff's arrest, (*see* Radi Decl. Ex. B (Dkt. No. 25-3)); (3) a copy of Ms. Berkley's sworn statement to NRPD dated June 26, 2021, which is referenced in the misdemeanor information filed against Plaintiff, (*see* Radi Decl. Ex. C (Dkt. No. 25-4)); (4) a copy of the transcript from Plaintiff's 50-h hearing, along with the errata, (*see* Decl. of Steven H. Glassberg in Opp'n to Defs.' Mots. ("Glassberg Decl.") (Dkt. No. 30) Ex. A ("50-h Tr.") (Dkt. No. 30-1)); (5) an excerpted copy of the NRPD's Manual of Procedure, including the NRPD's use of force policy, (*see* Glassberg Decl. Ex. B ("Use of Force Policy") (Dkt. No. 30-2)); and (6) a copy of the misdemeanor information filed against Plaintiff, (*see* Glassberg Decl. Ex. C (Dkt. No. 30-3)).  It

is axiomatic that the Court can consider the SAC.  And because the transcript from Plaintiff's

50-h hearing, the excerpted copy of the NRPD's Manual of Procedure, and the misdemeanor

information were attached to the SAC, (*see* SAC Exs. A–D (Dkt. Nos. 18-1–18-4)), the Court

can consider these documents, too.  *See Thomas*, 232 F. Supp. 2d at 275.  This leaves the

recording of the 911 calls and Ms. Berkley's sworn statement, which Individual Defendants

argue have either been incorporated into the SAC by reference or may be judicially noticed.  (*See*

Individual Defs.' Mem. of Law in Supp of Mot. ("Individual Defs.' Mem.") 5–6 (Dkt. No. 26).)

      "Generally, a court may incorporate documents referenced where (1) [the] plaintiff relies

on the materials in framing the complaint, (2) the complaint clearly and substantially references

the documents, and (3) the document's authenticity or accuracy is undisputed."  *Stewart v.

Riviana Foods Inc.*, No. 16-CV-6157, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2007)

(emphasis omitted) (collecting cases); *see also Dunkelberger v. Dunkelberger*, No. 14-CV-3877,

2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015) ("To be incorporated by reference, the

complaint must make a clear, definite, and substantial reference to the documents, and to be

integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information

and (2) relied upon the documents in framing the complaint." (alterations omitted) (quoting *Bill

Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL 4335164, at *3

(S.D.N.Y. Sept. 21, 2012))).  The Court finds that neither the recording of the pertinent 911 calls

nor Ms. Berkley's sworn statement has been incorporated by reference into the SAC, nor is

either exhibit integral to the SAC.

      The SAC refers to a single 911 call made by Plaintiff's father to the NRPD in a single

paragraph, and makes no reference to a 911 call made by either Plaintiff's mother or

Ms. Berkley.  (*See* SAC ¶ 12 ("On June 26, 2020, Plaintiff's father, called 911 requesting that an

ambulance be sent to Plaintiff's residence, because Plaintiff was in need of medical assistance due to a mental and emotional breakdown Plaintiff was having.").)  While the SAC does reference a call from a police dispatcher to Ms. Berkley, this again is only in one paragraph. (*See id.* ¶ 13 ("Subsequent to receiving the request for medical assistance from Plaintiff's father, a police dispatcher called Plaintiff's wife.  While on the phone with the Police Dispatcher, Plaintiff's wife confirmed with a police dispatcher, that Plaintiff was in need of medical care, that she was safe and that Plaintiff's minor children were not in the house and were safe.").)  In any event, it is well established that even "limited *quotation* does not constitute incorporation by reference," *Cosmas v. Hassett*, 886 F.2d 8, 14 (2d Cir. 1989) (emphasis added) (alteration omitted) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)), and here, the SAC makes only limited *reference* to a single 911 call from Plaintiff's father to the NRPD and a subsequent call from the NRPD to Ms. Berkley.  As such, the Court finds that the audio recordings of 911 calls made by Ms. Berkley and Plaintiff's mother were not incorporated by reference into nor are integral to the SAC, *see Dunkelberger*, 2015 WL 5730605, at *6 (declining to find police manual to be incorporated by reference where the plaintiff "did not even" include limited quotation from the manual in the complaint, but rather only "refer[red] to the [m]anual in two paragraphs," which "is insufficient to incorporate the document by reference"); *see also Yi Sun v. N.Y.C. Police Dep't*, No. 18-CV-11002, 2020 WL 4530354, at *7 n.7 (S.D.N.Y. Aug. 6, 2020) (declining to consider audio recording of 911 call as integral to the complaint where the complaint "only contains a single reference to the 911 call" and "does not rely on the existence or contents" of the call).

The Court's task is even easier with respect to Ms. Berkley's sworn statement because it is not referenced in the SAC at all.  (*See generally* SAC.)  Individual Defendants seem to argue

that the Court may consider this document because it is referenced in the misdemeanor information that was filed against Plaintiff and attached to the SAC, (*see* Radi Decl. ¶ 6), but the relevant inquiry is whether the statement was incorporated by reference into the SAC, not the documents attached to the SAC. *See Dunkelberger*, 2015 WL 5730605, at *6 ("[B]ecause there is no reference to the 911 report in the [complaint], it is not integral to the [c]omplaint.").

"Courts may take judicial notice of public documents and matters of public record," *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018), including "document[s] filed in another court[,] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings," *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quotation marks omitted). While Individual Defendants identify some authority for the proposition that a court may take judicial notice of a victim's statement or an incident report, Individual Defendants do not represent that Ms. Berkley's statement was filed in another court or is otherwise a matter of public record. (*See* Individual Defs.' Mem. 5–6.) *See also Alvarez*, 95 F. Supp. 3d at 394–98 (declining to take judicial notice of incident report and depositions from underlying criminal case in § 1983 suit alleging, inter alia, false arrest). And Individual Defendants offer neither authority nor argument for the proposition that a court may take judicial notice of the audio recordings of 911 calls. (*See* Individual Defs.' Mem. 5–6.)

As such, the Court declines to consider either the audio recordings of the 911 calls or Ms. Berkley's sworn statement in determining the disposition of the instant Motions.

B.  Factual Background

The following facts are drawn from the FAC and assumed to be true for the purposes of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam). Where relevant, the

Court also recounts facts from the various other materials the Court has ruled it may consider at this stage.

At noon on June 26, 2020, Plaintiff was at his home in New Rochelle with Ms. Berkley, his two children, and his children's nanny, when he and Ms. Berkley began to have a heated discussion outside their house. (*See* 50-h Tr. 21:25–22:24, 32:2–14.) The discussion escalated while the two were outside, and briefly paused while both Plaintiff and Ms. Berkley went inside the house to take work-related phone calls. (*See id.* at 32:2–12.) At this point, it appears that Plaintiff alleges that his father called 911 requesting that an ambulance be sent to Plaintiff's residence, because Plaintiff was having a "mental and emotional breakdown" and required medical assistance. (SAC ¶ 12.) After both Plaintiff and Ms. Berkley finished their work-related phone calls, they resumed their discussion in their bedroom, and Ms. Berkley received a phone call from a police dispatcher. (*See id.* at 32:2–12, 33:22–34:2; *see also* SAC ¶ 13.) Plaintiff heard Ms. Berkley tell the dispatcher that Plaintiff required medical treatment and that their children were not in the house and were safe; by this point, Plaintiff's children had gone to a nearby park with their nanny. (*See* 50-h Tr. 26:5–24, 33:11–34:14.) After hearing Ms. Berkley's conversation with the police dispatcher, Plaintiff walked outside of his house and sat down on the front stoop, calm and unarmed. (*See id.* at 35:4–10; *see also* SAC ¶ 18.)

Shortly thereafter, between five and twenty NRPD police officers wearing SWAT gear and armed with rifles arrived at Plaintiff's house, accompanied by neither an ambulance nor any medical professionals. (*See* 50-h Tr. 35:11–16; SAC ¶ 14.) Three of those officers were Hayes, John Doe #1, and John Doe #2. (*See* SAC ¶¶ 19–20.) Hayes introduced himself to Plaintiff as NRPD's lead negotiator, and Hayes, John Doe #1, and John Doe #2 assured Plaintiff that he would receive the mental health assistance he needed. (*See id.*) Plaintiff was then handcuffed

and placed in the back of an NRPD vehicle driven by either John Doe #1 or John Doe #2, neither of whom answered Plaintiff's question as to which medical facility Plaintiff was being taken. (*See id.* ¶¶ 21, 23.)  John Doe #1 eventually told Plaintiff that before taking Plaintiff to a hospital, they had to make a stop, and pulled into the New Rochelle police station.  (*See id.* ¶¶ 24–25.)  Plaintiff was then placed in a holding cell, where he remained for several hours before an unidentified officer read Plaintiff his *Miranda* rights.  (*See id.* ¶ 26.)

After Plaintiff was read his *Miranda* rights, he requested on several occasions that he be permitted to make a phone call, but when he was finally brought to a phone by John Doe #3 and John Doe #4—two NRPD officers then on duty—the phone was not able to make calls to either a 203 or 516 area code.  (*See id.* ¶¶ 27, 46; *see also* 50-h Tr. 61:10–62:11.)  As a result, Plaintiff was not able to call either his father or his attorney.  (*See* SAC ¶ 27.)  After this failed attempt to call his father and attorney, Plaintiff was led back to the holding cell by an NRPD officer who shoved him on the way.  (*See id.* ¶ 28.)  Later, Plaintiff was permitted to use his cell phone and called his father; while he had been promised three phone calls, Plaintiff was not permitted to make any further calls after speaking to his father and thus could not call his attorney.  (*See id.* ¶ 29; *see also* 50-h Tr. 66:7–12.)

After speaking with his father, Plaintiff was brought back to a cell and informed that he would be spending the night in the custody of NRPD and would be arraigned the following morning.  (*See id.* ¶ 30.)  Plaintiff was not informed of the charges that were being brought against him at this time.  (*See id.*)  On two occasions that night, Plaintiff asked NRPD officers on duty—specifically, John Doe #5 and John Doe #6—for a face mask to protect himself against the COVID-19 virus, and was told he did not need one because the cells were clean.  (*See id.* ¶¶ 31,

71.)  However, Plaintiff learned at his arraignment the following day that other detainees were provided with face masks while in NRPD custody.  (*See id.* ¶ 151.)

The following afternoon, Plaintiff was arraigned, during which he was represented by a public defender because he still had not been permitted to call his attorney; he had most recently asked the NRPD officer who escorted him to his arraignment, John Doe #7, if he could call counsel, and John Doe #7 refused.  (*See id.* ¶¶ 32, 33, 47; *see also* 50-h Tr. 71:2–73:7.)  Plaintiff was charged with Endangering the Welfare of a Child, Menacing in the Third Degree, and Harassment 2nd—Physical Contact.  (*See* SAC ¶ 33.)  After his arraignment, Plaintiff was released from custody and was able to call his attorney and retain counsel for the criminal proceeding against him, which was resolved via an Adjournment in Contemplation of Dismissal. (*See id.* ¶¶ 34–35.)

Based on the above, Plaintiff brings seven separate causes of action: (1) a claim pursuant to § 1983 for violations of the Sixth and Fourteenth Amendments based on the alleged denial of Plaintiff's right to counsel against John Doe #3, John Doe #4, and John Doe #7, (*see id.* ¶¶ 38–53); (2) a claim pursuant to § 1983 for violations of the Eighth and Fourteenth Amendments based on the alleged denial of a face mask and exposure to COVID-19 against John Doe #5 and John Doe #6, (*see id.* ¶¶ 54–80); (3) a claim under Article I, § 6 of the New York Constitution for denial of the right to counsel against John Doe #3, John Doe #4, and John Doe #7, (*see id.* ¶¶ 81–95); (4) a claim for violation of New York Criminal Procedure Law ("NY CPL") § 140.20(7) for denial of telephone use upon his arrest against John Doe #3, John Doe #4, John Doe #5, John Doe #6, and John Doe #7, (*see id.* ¶¶ 96–106); (5) a claim under New York state law for false arrest and imprisonment against John Doe #1 and John Doe #2, (*see id.* ¶¶ 107–25); (6) a claim pursuant to § 1983 for violation of the Fourth and Fourteenth Amendments based on

9

Plaintiff's alleged false arrest and imprisonment against John Doe #1 and John Doe #2, (*see id.*

¶¶ 126–44); and (7) a claim pursuant to § 1983 for violation of the Fourteenth Amendment based

on the alleged denial of Plaintiff's right to equal protection via denial of a face mask against John

Doe #5 and John Doe #6, (*see id.* ¶¶ 145–55).  Plaintiff seeks declaratory relief in addition to

compensatory and punitive damages.  (*See id.* at 26–27.)

    C.  Procedural History

        Plaintiff filed his initial Complaint and Summons in Westchester County Court on

December 29, 2020.  (*See* Dkt. No. 3.)  Moving Defendants removed the Action to this Court on

January 22, 2021.  (*See* Dkt. No. 2.)  On January 29, 2021, Moving Defendants filed a pre-

motion letter in anticipation of filing a motion to dismiss the Complaint.  (*See* Dkt. No. 6.)  In

response, Plaintiff informed the Court of his intention to file an amended complaint, (*see* Dkt.

No. 8), which Plaintiff filed on February 25, 2021, (*see* First Am. Compl. (Dkt. No. 10)).  On

March 10, 2021, Moving Defendants filed a pre-motion letter in anticipation of filing a motion to

dismiss the First Amended Complaint.  (*See* Dkt. No. 11.)  Following Plaintiff's response to

Moving Defendants' pre-motion letter, (*see* Dkt. No. 14), the Court held a pre-motion conference

on April 13, 2021, (*see* Dkt. (minute entry for Apr. 13, 2021)).  During the conference, the Court

granted Plaintiff's request to file a second amended complaint, which Plaintiff filed on April 30,

2021.  (*See* SAC.)  On May 14, 2021, Moving Defendants filed another pre-motion letter in

anticipation of filing a motion to dismiss the SAC.  (*See* Dkt. No. 19.)  Following Plaintiff's

response to Moving Defendants' pre-motion letter, (*see* Dkt. No. 20), the Court held another pre-

motion conference on June 9, 2021, (*see* Dkt. (minute entry for June 9, 2021)).  Pursuant to the

briefing schedule adopted at this conference, Municipal Defendants and Individual Defendants

filed their Motions on July 16, 2021.  (*See* Municipal Defs.' Not. of Mot.; Decl. of Mark A. Radi

in Supp. of Municipal Defs.' Mot. (Dkt. No. 28); Municipal Defs.' Mem. of Law in Supp. of

Mot. ("Municipal Defs.' Mem.") (Dkt. No. 29); Individual Defs.' Not. of Mot.; Radi Decl.;

Individual Defs.' Mem.)  Plaintiff filed his consolidated Opposition on August 13, 2021.  (*See*

Glassberg Decl.; Pl.'s Mem. of Law in Opp'n to Mots. ("Pl.'s Mem.") (Dkt. No. 31)).  Moving

Defendants filed their joint Reply on August 20, 2021.  (*See* Reply in Further Supp. of Mots.

(Dkt. No. 32).)

## II.  Discussion

### A.  Standard of Review

Moving Defendants move to dismiss the SAC in its entirety pursuant to Federal Rule of

Civil Procedure 12(b)(6), and separately seek to strike Plaintiff's claim for punitive damages

pursuant to Federal Rule of Civil Procedure 12(f).

#### 1.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint," *id.* at

563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its

face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to

plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 95 (citation omitted). Additionally, as previously noted, "when ruling on Rule 12(b)(6) motions to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin*, 6 F.4th at 473 (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. Mar. 26, 2021) (same).

### 2. Rule 12(f)

"The standard that applies to a motion to strike is the 'mirror image' of the standard on a 12(b)(6) motion to dismiss for failure to state a claim." *Bd. of Managers of Trump Tower at City Ctr. Condominium by Nieditch v. Palazzolo*, 346 F. Supp. 3d 432, 471 (S.D.N.Y. 2018) (quoting *Cohen v. Elephant Wireless, Inc.*, No. 03-CV-4058, 2004 WL 1872421, at *2 (S.D.N.Y. Aug. 19, 2004)). Rule 12(f) permits a court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Although

motions to strike under Rule 12(f) are generally disfavored and granted only if there is strong reason to do so, ample authority permits striking prayers for punitive damages where such relief is unavailable as a matter of law." *Doe v. Indyke*, 457 F. Supp. 3d 278, 284–85 (S.D.N.Y. 2020) (quotation marks and citations omitted) (collecting cases).

### B.  Analysis

Municipal Defendants argue that the Action must be dismissed against NRPD and the City because: (1) NRPD, as an administrative arm of the City, cannot be sued under New York law, (*see* Municipal Defs.' Mem. 1–2); and (2) Plaintiff has failed to state a claim for municipal liability against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), (*see id.* at 2–7).  Municipal Defendants also argue that, in any event, Plaintiff's request for punitive damages must be stricken under Rule 12(f) because as a government entity, the City is immune from punitive damages.  (*See id.* at 7.)

Individual Defendants argue that the Action must be dismissed against Hayes, Machado, Bornholz, and Sanchez because: (1) Plaintiff has failed to allege any personal involvement by Individual Defendants in the constitutional violations, (*see* Individual Defs.' Mem. 6–7); (2) Individual Defendants are entitled to qualified immunity, (*see id.* at 8–12); (3) Plaintiff fails to plausibly state a claim for false arrest, (*see id.* at 12–15); (4) Plaintiff fails to plausibly state a claim for deliberate indifference, (*see id.* at 15–18); (5) Plaintiff fails to plausibly state a claim for denial of right to counsel, (*see id.* at 19–24); and (6) Plaintiff fails to plausibly state a claim for denial of equal protection, (*see id.* at 24–25).  Individual Defendants also argue that, in any event, Plaintiff's request for punitive damages must be stricken under Rule 12(f) because Plaintiff fails to allege evil motive or intent or reckless or callous indifference.  (*See id.* at 25– 26.)

13

The Court will address these arguments to the extent necessary to decide the instant
Motions.

### 1.  Federal Claims Against Municipal Defendants

As a preliminary matter, the Court notes that neither of the Municipal Defendants has
been identified as the defendant against which any of Plaintiff's causes of action are brought;
instead, Plaintiff identifies only John Doe defendants in expounding his causes of action.  (*See
generally* SAC.)  While Municipal Defendants identified this deficiency in their Memorandum of
Law, (*see* Municipal Defs.' Mem. 2), Plaintiff failed to even mention it in his Opposition, (*see
generally* Pl.'s Mem.).  As such, it is unclear to the Court whether Plaintiff even intends to bring
any claims against either Municipal Defendant.  In any event, the Court finds that to the extent
Plaintiff brings any claims against NRPD or the City, they are subject to dismissal.

### a.  NRPD

It is clear that Plaintiff's claims against NRPD must be dismissed.  "Pursuant to Federal
Rule of Civil Procedure 17, federal courts must look to state law when deciding whether a
government entity may be sued."  *Sagaria v. Orange Cnty. Jail*, No. 20-CV-2287, 2021 WL
4392422, at *3 (S.D.N.Y. Sept. 24, 2021); *see also* FED. R. CIV. P. 17(b)(3) (providing that
capacity to be sued is determined "for all . . . parties [except individuals or corporations] by the
law of the state where the court is located").  "It is well-established that 'under New York law,
departments that are merely administrative arms of a municipality do not have a legal identity
separate and apart from the municipality and, therefore, cannot sue or be sued.'"  *Perros v.
County of Nassau*, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017) (quoting *Davis v. Lynbrook Police
Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002)); *see also Omnipoint Commc'ns, Inc. v. Town
of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a
municipality are not suable entities.  The only proper defendant in a lawsuit against an agency of

a municipality is the municipality itself, not the agency through which the municipality acted.").

"Police departments are just such administrative arms of their corresponding municipality."

*Wilson v. New Rochelle Police Dep't*, No. 13-CV-5997, 2014 WL 2624756, at *2 (S.D.N.Y.

June 3, 2014). As such, "[t]he New Rochelle Police Department is not a suable entity," and

Plaintiff's claims against it must be dismissed. *Id.* (dismissing claims against NRPD); *see also*

*Williams v. City of New Rochelle*, No. 13-CV-3315, 2014 WL 2445768, at *2 (S.D.N.Y. May 29,

2014) ("[A]ll of [the] [p]laintiff's claim[s] against the New Rochelle Police Department are

dismissed . . . [because] [a]s an agency of the [c]ity, the [p]olice [d]epartment is not a suable

entity for suit under § 1983." (alterations and quotation marks omitted)); *Qadar v. New York*, 396

F. Supp. 2d 466, 469 (S.D.N.Y. 2005) ("[T]he New Rochelle Police Department is not a 'suable

entity' under [§ 1983].").

Accordingly, Plaintiff's claims against NRPD are dismissed.

### b. The City

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under

color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of*

*Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013). However, "Congress did not intend municipalities to

be held liable [under § 1983] unless action pursuant to official municipal policy of some nature

caused a constitutional tort." *Monell*, 436 U.S. at 691. Thus, "to prevail on a claim against a

municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove:

(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right;

(3) causation; (4) damages; and (5) that an official policy of the municipality caused the

constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see also*

*Williams v. Lohard*, No. 20-CV-10571, 2022 WL 269164, at *3 (S.D.N.Y. Jan. 28, 2022) ("[The]

[p]laintiff's claim against the [c]ity fails for lack of facts supporting the existence of a municipal

policy or practice." (citing cases)); *Palmer v. City of New York*, — F. Supp. 3d — , 2021 WL 4480572, at *7–8 (E.D.N.Y. Sept. 30, 2021) (dismissing claim against city where the plaintiffs failed to "sufficiently allege[] that they suffered constitutional violations as a result of an official policy or custom" (quotation marks omitted)). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality) ("Proof of a single incident of unconstitutional activity is not sufficient to impose

liability under *Monell*, unless proof of the incident proof that it was caused by an existing,

unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.");

*Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident

by itself is generally insufficient to establish the affirmative link between the municipal policy or

custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the

following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread
> that, although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policymakers
> to provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted);

*see also Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2014) (describing

methods of establishing *Monell* liability).  Moreover, as indicated above, a plaintiff must also

establish a causal link between the municipality's policy, custom, or practice and the alleged

constitutional injury.  *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might

lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular

policy be the 'moving force' behind a constitutional violation.  There must at least be an

affirmative link between[,] [for example,] the training inadequacies alleged, and the particular

constitutional violation at issue." (emphasis omitted)); *Batista v. Rodriguez*, 702 F.2d 393, 397

(2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the

plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Hincapie v. City of

New York*, 434 F. Supp. 3d 61, 77 (S.D.N.Y. 2020) (finding that the plaintiff "fails to state a

17

*Monell* claim" because the plaintiff "has not pled facts demonstrating a direct link between his injuries and the alleged municipal policy"); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (quotation marks omitted)).

Here, the only such official municipal policy that Plaintiff identifies is NRPD's use of force policy.  (*See* SAC ¶¶ 15, 16; Use of Force Policy.)  However, Plaintiff does not argue that NRPD's use of force policy caused his alleged constitutional deprivation—as required to state a claim under *Monell*—but rather argues that the *violation* of NRPD's use of force policy caused his alleged constitutional deprivation.  Specifically, Plaintiff argues that NRPD's use of force policy states in relevant part that "[a] member of [NRPD] who has custody of a person must provide attention to the medical and mental health needs of that person in their custody and obtain assistance and treatment of such needs, which are reasonable and provided in good faith." (Pl.'s Mem. 12 (quoting Use of Force Policy ¶ 6.1).)  Because Plaintiff alleges he was experiencing a mental health crisis when NRPD arrived at his home to take him into custody, Plaintiff argues that pursuant to NRPD's use of force policy, the NRPD officers on the scene should have brought him to a hospital or other medical facility to receive the care he needed rather than to the police station for detention.  (*See id.* at 12–13.)  As such, Plaintiff argues that "[Municipal] Defendants failed to abide by the official government policy in the manner they were required to."  (*Id.* at 12.)  The Court agrees with Municipal Defendants that this claim fails because it is the "antithesis of a *Monell* claim." *Thomas v. DuBois*, No. 19-CV-7533, 2020 WL 2092426, at *4 (S.D.N.Y. Apr. 30, 2020) (quoting *Adams v. Orange County*, No. 13-CV-8549,

2014 WL 6646042, at *4 (S.D.N.Y. Nov. 12, 2014)).  "In other words, any violation of

Plaintiff's constitutional rights was caused by the *failure* to follow a policy, not the policy itself.

By definition, such allegations fail to state a claim under *Monell*."  *Id.* (collecting cases); *see also*

*Williams v. City of N.Y. Dep't of Corr.*, No. 19-CV-9528, 2020 WL 3893929, at *6 n.5

(S.D.N.Y. July 10, 2020) ("[T]his claim is not that the [defendant's] policy was improper, but

that [the defendant's] officers failed to follow their own policy.  An alleged failure to follow a

policy 'is the antithesis of a link between policy and action,' and is insufficient to state a claim

under *Monell*." (quoting *Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *7 (S.D.N.Y.

June 23, 2010))).[2]

      To the extent Plaintiff seeks to bring any additional claims against the City based on any

other alleged municipal policies, these claims fail as unsupported by non-conclusory factual

allegations and abandoned.  In the SAC, Plaintiff appears to identify a number of other

"policies," including "the policy of . . . sending a police response to a request for an ambulance

[for] a mental health call" and "the policy of . . . allowing the NRPD, and not a trained

professional, to determine the mental health needs of an individual and how to respond."  (SAC

¶¶ 139, 140.)  However, Plaintiff's bare allegations that such policies exist and were violated in

the course of his arrest are "conclusory, and therefore must be disregarded."  *Simms v. City of*

*New York*, No. 10-CV-3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (dismissing

---

[2] Even if the violation of a municipal policy could form the basis of a *Monell* claim, Plaintiff fails to allege how the alleged violation of the NRPD's use of force policy led to a constitutional deprivation.  Plaintiff seems to argue that the violation of this provision of NRPD's use of force policy led to his false arrest, (*see* Pl.'s Mem. 12), but the policy on its face applies to the treatment of arrestees who are already in NRPD custody, (*see* Use of Force Policy § 6.1 ("A member of [NRPD] *who has custody of a person* . . . ." (emphasis added))).  As such, the Court fails to understand how compliance with or violation of this policy could lead to an arrest, false or otherwise.

conclusory allegations that did not provide sufficient facts to allow the court to infer what city policies or practices led to the alleged deficiency), *aff'd*, 480 F. App'x 627 (2d Cir. 2012); *see also Bohmer v. New York*, No. 06-CV-11370, 2011 WL 2651872, at *3 (S.D.N.Y. June 16, 2011) ("Boilerplate assertions that a municipality has a custom or policy resulting in a constitutional deprivation of the plaintiff's rights are insufficient."); *Moore v. City of New York*, No. 08-CV-8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010) ("Allegations that a defendant acted pursuant to a policy or custom without any facts suggesting the policy's existence, are plainly insufficient." (quotation marks omitted)).

Moreover, Municipal Defendants addressed Plaintiff's allegations concerning various additional policies in their Memorandum of Law, (*see* Municipal Defs.' Mem. 2–7), and the only policy that Plaintiff discusses in his Opposition is the NRPD's use of force policy, (*see generally* Pl.'s Mem.). As such, any claims against the City based on any other municipal policies are subject to dismissal for the separate and independent basis that they are abandoned. *See Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.DN.Y. 2021) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (alterations and citation omitted)); *Laface v. E. Suffolk BOCES*, No. 18-CV-1314, 2019 WL 1959489, at *8 (E.D.N.Y. May 2, 2019) ("In the Second Circuit, a plaintiff's failure to respond to contentions raised in a motion to dismiss constitute[s] an abandonment of those claims." (alteration and quotation marks omitted) (collecting cases)).

Accordingly, Plaintiff's claims against the City are dismissed.

### 2. Federal Claims Against Individual Defendants

As for Individual Defendants, the Court again notes that none of the Individual Defendants has been identified as the defendant against which any of Plaintiff's causes of action are brought. (*See generally* SAC.) Like Municipal Defendants, Individual Defendants identified

this deficiency in their Memorandum of Law, (*see* Individual Defs.' Mem. 6), and Plaintiff failed

to even mention it in his Opposition, (*see generally* Pl.'s Mem.).  As such, it is unclear to the

Court whether Plaintiff even intends to bring any claims against any of the Individual

Defendants.  In any event, the Court finds that to the extent Plaintiff brings any claims against

any of the Individual Defendants—in either their official or individual capacities—they are

subject to dismissal.

### a.  Official Capacity Claims

Plaintiff's claims against Individual Defendants in their official capacities fail for the

same reason that Plaintiff's *Monell* claim against the City fail.  Individual Defendants are

municipal employees as NRPD police officers, and as such, claims against them in their official

capacities "'are tantamount to claims against the municipality itself.'"  *Fierro v. N.Y.C. Dep't of

Educ.*, 994 F. Supp. 2d 581, 588 (S.D.N.Y. 2014) (quoting *Dwares v. City of New York*, 985 F.2d

94, 100 (2d Cir. 1993)); *see also Patterson*, 375 F.3d at 226 ("[A] claim against a municipal

employee in his official capacity is deemed brought against the municipality itself." (citation

omitted)); *Davis v. Stratton*, 360 F. App'x 182, 183 (2d Cir. 2010) (summary order) ("The suit

against the mayor and police chief in their official capacities is essentially a suit against the City

of Schenectady, because in a suit against a public entity, naming officials of the public entity in

their official capacities adds nothing to the suit."  (alteration and quotation marks omitted)).  As

such, "'there must be proof of [a municipal] custom or policy [that caused the plaintiff's alleged

constitutional deprivation] in order to permit recovery on claims against individual municipal

employees in their official capacities,'" and for the reasons outlined above, Plaintiff here has

failed to adequately allege the existence of such a custom or policy.  *Fierro*, 994 F. Supp. 2d at

588 (quoting *Dwares*, 985 F.2d at 100); *see also Carr v. County of Sullivan*, No. 16-CV-6850,

2018 WL 3733952, at 5 n.8 (S.D.N.Y. Aug. 3, 2018) ("Given that [the] [p]laintiff has not

plausibly alleged the existence of an official policy or custom, the claims against the municipal employees in their official capacities are dismissed.").

Accordingly, Plaintiff's claims against Individual Defendants in their official capacities are dismissed.

### b.  Individual Capacity Claims

As for Plaintiff's claims against Individual Defendants in their individual capacities, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (emphases and quotation marks omitted).  In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Therefore, Plaintiff must plausibly allege that Individual Defendants' actions fall into one of the five categories identified above.  *See Lebron v. Myrzglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff fails to allege how any of the Individual Defendants was involved in the alleged constitutional deprivations.  Indeed, Sanchez, Machado, and Bornholz's names do not appear in

the allegations at all; instead, their names appear only in the case caption and the "Parties"

section.  (*See generally* SAC.)  Failing to name a defendant outside the caption of the complaint

is grounds for dismissal.  *See Thomas*, 2020 WL 2092426, at *4 (dismissing complaint because

the plaintiff did "not even mention [the] [d]efendant in the body of the [c]omplaint" (collecting

cases)); *Moore v. Westchester County*, No. 18-CV-7782, 2019 WL 3889859, at *5 (S.D.N.Y.

Aug. 19, 2019) (explaining that "personal involvement is not established where the defendant's

name appears only in the caption of the complaint"); *Mercedes v. Westchester County*, No. 18-

CV-4087, 2019 WL 1429566, at *5 (S.D.N.Y. Mar. 19, 2019) (dismissing the individual

defendants for failure to allege personal involvement where "[the] [p]laintiff simply does not

make any allegations regarding any individual whatsoever"); *Lovick v. Schriro*, No. 12-CV-

7419, 2014 WL 3778184, at *3 (S.D.N.Y. July 25, 2014) ("[T]he only place [the individual

defendants'] names appear is in the caption and in the section of the [complaint] where [the]

[p]laintiff . . . list[s] all [d]efendants.  Since there are no allegations whatsoever indicating [that

the individual defendants] were personally involved in the purported violations, [the] [p]laintiff's

§ 1983 claims against them are dismissed." (citation omitted)).

   While Plaintiff does name Hayes outside of the caption and the "Parties" section,

Plaintiff's factual allegations regarding Hayes are limited to allegations that Hayes was part of

the group of NRPD officers that came to Plaintiff's home and that Hayes had a conversation with

Plaintiff at that time.  (*See* SAC ¶¶ 17, 19, 20, 22, 133.)  Plaintiff does not allege that Hayes

made any decisions as to whether NRPD had probable cause to arrest Plaintiff, was responsible

for actually arresting Plaintiff, or was even present at the police station where Plaintiff alleges

the remainder of his constitutional deprivations took place.  (*See generally* SAC.)  These

allegations are insufficient to establish personal involvement sufficient to confer § 1983 liability

on Hayes.  *See, e.g.*, *Snead v. City of New York*, 463 F. Supp. 3d 386, 398 (S.D.N.Y. 2020) ("An officer's mere presence at the scene of a stop or arrest generally does not constitute sufficient personal involvement for § 1983 liability." (collecting cases)).

Accordingly, Plaintiff's claims against Individual Defendants in their individual capacities are dismissed.[3]

### 3.  State Law Claims

As the Court has dismissed Plaintiff's federal causes of action against Moving Defendants, it declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Moving Defendants, to the extent Plaintiff intends to bring them.  *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Torres v. City of New York*, 248 F. Supp. 2d 333, 334 (S.D.N.Y. 2003) ("Where the basis for pendent jurisdiction is dismissed, ordinarily so should the state law claims be dismissed.").

### III.  Conclusion

For the foregoing reasons, the Court grants Municipal Defendants and Individual Defendants' Motions To Dismiss.  Because this is the first adjudication of Plaintiff's claims, the SAC is dismissed without prejudice.

---

[3] The Court notes that Plaintiff's claims against "Rodriguez" (assuming such an officer exists, *see supra* Note 1) would be subject to dismissal for the same reasons that Plaintiff's claims against Individual Defendants are subject to dismissal.  However, Rodriguez has not yet been served, and the SAC was filed well over 90 days ago.  And despite being on notice of this service failure via Individual Defendants' Motion, (*see* Individual Defs.' Mem. 7 n.4 ("[Rodriguez] has not been served.")), Plaintiff has made no attempt to demonstrate good cause or even mention Rodriguez, (*see generally* Pl.'s Mem.).  As such, the Court dismisses Plaintiff's claims against Rodriguez pursuant to Federal Rule of Civil Procedure 4(m).  *See* FED. R. CIV. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

While Plaintiff will be provided with an opportunity to amend his complaint, the Court offers a word of caution.  As indicated above, Plaintiff's causes of action are based on the alleged conduct of seven of the John Doe defendants, not the alleged conduct of any of the Moving Defendants (or, for that matter, John/Jane Doe #8, #9, or #10).  (*See generally* SAC.) Because the John Doe defendants have not been identified, let alone served and provided with an opportunity to answer or move against Plaintiff's complaint, the Court has declined to rule on the merits of Plaintiff's claims against the John Doe defendants.  However, it is clear from the face of the SAC that many—if not most—of Plaintiff's claims against the John Doe defendants are of questionable merit.  For instance, it is clear that denial of a face mask cannot on its own support a claim for deliberate indifference to medical needs under the Fourteenth Amendment, particularly in the early stages of the COVID-19 pandemic.[4]  The Court is also skeptical that Plaintiff can state a Sixth Amendment claim for the denial of counsel of his choice when he was only allegedly denied the counsel of his choice for his arraignment—at which he was represented by appointed counsel and pled not guilty—and was thereafter represented by his chosen

---

[4] *See, e.g.*, *Dumel v. Westchester County*, No. 19-CV-2161, 2021 WL 738365, at *8–9 (S.D.N.Y. Feb. 25, 2021) ("To establish a claim for deliberate indifference to medical needs under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee must establish two elements: first, that the deprivation of medical care was sufficiently serious, and second, that the defendant acted or failed to act with a sufficiently culpable state of mind . . . [which] requires proof of a mens rea greater than negligence." (alterations and quotation marks omitted)); *see also Monroe v. Jouliana*, No. 20-CV-6807, 2021 WL 6052162, at *4 (S.D.N.Y. Dec. 20, 2021) (finding that allegations that the defendant "denied [the] plaintiff's request for a mask despite knowing that [the] plaintiff suffered from conditions that heightened his chances of severe illness or death due to COVID-19" failed to adequately state the existence of an objectively unreasonable risk of serious damage to the plaintiff's health); *Montes v. O'Shea*, No. 17-CV-303, 2021 WL 1759853, at *8 (N.D.N.Y. Apr. 6, 2021) ("Nor does the court find that by referencing the *potential* risk of exposure to [COVID-19], without more, [the] plaintiff has plausibly alleged that his living conditions reflected a level of deprivation cognizable under the Fourteenth Amendment."), *report and recommendation adopted*, 2021 WL 1758858 (N.D.N.Y. May 4, 2021).

counsel.[5]  Moreover, Plaintiff's threadbare allegations that other detainees were provided with

face masks, with no detail as to any similarities between Plaintiff and the other detainees beyond

the fact that all were detained by NRPD, are insufficient to state a "class of one" or selective

enforcement equal protection claim.[6]

Finally, while the Court did not consider the audio recording of the 911 calls in ruling on

Moving Defendants' Motions, *see supra* I.A.—and will continue to decline to consider the audio

recording in ruling on any forthcoming motions to dismiss assuming the Plaintiff's allegations

concerning the 911 calls in his third amended complaint do not materially change—the Court has

reviewed the audio recording of the 911 calls in reviewing the Parties' submissions on the instant

---

[5] *See Hurrell-Harring v. New York*, 930 N.E.2d 217, 224 (N.Y. 2010) ("[W]here it happens that what occurs at arraignment does not affect a defendant's ultimate adjudication, a defendant is not on the ground of nonrepresentation entitled to a reversal of his or her conviction."); c*f. United States v. Gonzalez-Lopez*, 548 U.S. 140, 144–50 (2006) (finding denial of right to counsel of choice after arraignment to be a "structural error" not subject to harmless error review because "[d]ifferent attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument [and] the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial").

[6] *See, e.g.*, *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59–60 (2d Cir. 2010) ("Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.  Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person would regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." (quotation marks and citation omitted)), *cert. denied*, 562 U.S. 1108 (2010); *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("To prevail on a claim of selective enforcement, plaintiffs in this Circuit traditionally have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." (quotation marks omitted)); *Best v. N.Y.C. Dep't of Corr.*, 14 F. Supp. 3d 341, 352 (S.D.N.Y. 2014) ("[B]oth selective enforcement and class of one equal-protection theories require that the plaintiff sufficiently plead the existence of similarly situated others." (quotation marks and alterations omitted)).

Motions and Plaintiff's characterization of the 911 calls in the SAC is not accurate.  First, it was Plaintiff's mother, Joan Berkley ("Joan"), who made the initial 911 call, not Plaintiff's father. (*See* Radi Decl. Ex. B.)  While Joan told the 911 dispatcher that Plaintiff was suffering a mental and emotional breakdown, Joan also informed the 911 dispatcher that Ms. Berkley had called Joan hysterically because Plaintiff had a gun and threatened to take his children and shoot his parents if his parents came to his home.  (*See id.*)  When the police called Ms. Berkley, she told the police that she was standing in front of the closet containing the Berkleys' gun safe to prevent Plaintiff from getting to it.  (*See id.*)  And while Ms. Berkley told the police that the children were not in the house, because they were with their nanny, on the audio recording, Ms. Berkley can be heard telling Plaintiff that she had "been tackling [Plaintiff] away from [their] children."  (*Id.*)  At no point did either Joan or Ms. Berkley request medical assistance for Plaintiff; instead, they requested police intervention to keep Plaintiff, Ms. Berkley, and the children safe.  (*See id.*)  As such, Plaintiff will be hard pressed to refute a claim that the NRPD had probable cause to arrest Plaintiff, thus seriously undermining any false arrest claim.[7]

With all of the above in mind, the Court reminds Plaintiff's counsel of his Rule 11 obligations, and that "[b]y presenting to the [C]ourt a pleading, written motion, or other paper," Plaintiff's counsel "certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the claims "are warranted by existing law

---

[7] *See, e.g.*, *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime."); *Curley v. Village of Suffern*, 268 F.3d 65, 69–70 (2d Cir. 2001) ("Probable cause exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.  When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." (quotation marks and citations omitted)).

or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and "the factual contentions have evidentiary support." FED. R. CIV. P. 11(b).  Violation of this provision is grounds for sanctions.  *See* FED. R. CIV. P. 11(c).

The Court will hold a telephonic status conference on April 12, 2022 at 10am to discuss and set a schedule for filing a third amended complaint.  The Clerk of Court is respectfully directed to terminate the pending Motions.  (*See* Dkt. Nos. 24, 27.)

SO ORDERED.

Dated:    March 15, 2022
          White Plains, New York

_____
       KENNETH M. KARAS
     United States District Judge